# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| Moussa Kouyate, Genesis Johnson, Angel Benitez, and Elizabeth Zmrhal, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NUK USA LLC, Graco Children's Products Inc. and Newell Brands Inc.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Moussa Kouyate, Genesis Johnson, Angel Benitez, and Elizabeth Zmrhal ("Plaintiffs"), by their undersigned counsel, bring this class action complaint against Defendants NUK USA LLC ("NUK"), Graco Children's Products Inc. ("Graco") and Newell Brands Inc. ("Newell") (collectively "Defendants"), individually and on behalf of all others similarly situated, and allege upon personal knowledge as to their acts and experiences, and as to all other matters, upon information and belief, including the investigation conducted by Plaintiffs' attorneys.

# INTRODUCTION

1.  This is a proposed class action against Defendants arising out of Defendants' false and misleading marketing, advertising, and packaging of the NUK for Nature 100% Sustainable Silicone Pacifier (the "Pacifier," or the "Product"). The crux of this Complaint is Defendants' overstatement of the silicone Pacifier's sustainability—it is not 100% sustainable and instead, the Pacifier has a negative impact on the natural resources used to create the Pacifier and on the environment.

2.  The Product is a line of pacifiers for infants and older children that Defendants marketed to consumers as a "100%" environmentally friendly pacifier option with representations like "100% sustainable". Below is an image of the Pacifier's packaging.



  3. Defendants decided to represent the Product as "100%" sustainable, and Defendants are obligated to deliver on that statement. Claiming a product is 100% sustainable means that every aspect is completely sustainable. The same goes for any discrete aspect of the product that is marketed as "100% sustainable," such as silicone in this case.

  4. The Federal Trade Commission warns companies against the types of overbroad, vague, and unbounded claims the Defendants employed here. In regulations called the "Green Guides," the FTC says that "[u]nqualified general

environmental benefit claims are difficult to interpret and likely convey a wide range of meanings." 16 C.F.R § 260.4(b).  "Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims." *Id.*

5.     Defendants' representations are false, misleading, deceptive, and likely to, and did mislead consumers because Defendants represent the Product as 100%: Sustainable, Silicone, and Durable.  This is an overstatement of environmental benefit and specifically, an overstatement of the Pacifier's sustainability.   The Product may be made of 100% silicone (excluding the packaging)[1], but neither the silicone in the Pacifier nor the Product as a whole is 100% sustainable or 100% durable (durability being an attribute of sustainability (*i.e.*, the Pacifier is purportedly made to last, thereby decreasing waste and promoting a reduction in the use of natural resources)).

6. A sustainable product (*i.e.*, the Pacifier) or material (*i.e.*, silicone), refers to a product or material that is made in a way that causes no damage to the

---

[1] *See* FTC Green Guides, 16 CFR § 260.3(b) ("[A]n environmental claim should specify whether it refers to the product, the product's packaging, a service, or just a portion of the product, package, or service."), located at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguides.pdf.

environment and is able to continue to be used for a long time.[2]  Here, however, the Pacifier and the materials used to make the Pacifier cause damage to the environment and cannot be used for a long period of time.

7. The Pacifier is not 100% sustainable. "100%" sustainability is a deceptive overstatement of environmental benefits where the Pacifier undergoes manufacturing, distribution (which overlaps with Defendants' other products that are not labeled as "sustainable")[3], use, and disposal processes that are not all sustainable.

8. Additionally, Defendants omit material facts on the Pacifier's packaging concerning the risks associated with manufacturing and disposing of silicone products.  Silicone undergoes an intensive manufacturing process that includes environmentally destructive mineral mining for silica sand, the main ingredient in silicone.  Silicone is not recyclable, reusable, or biodegradable. Silicone will also persist in the environment for hundreds of years once it reaches the end of its usable life. [4]  These facts contradict Defendants' claim that the Pacifier is 100% Sustainable.

---

[2] *Sustainable*, Cambridge Dictionary,
https://dictionary.cambridge.org/us/dictionary/english/sustainable#google_vignette
(last visited Aug. 5, 2024).
[3] NUK USA has a U.S. manufacturing plant in Reesdburg, Wisconsin and both "For Nature" and other products are manufactured there.
[4] *From Sand to Shelf: Is Silicone Eco-Friendly?,* GreenMatch, Mar. 20, 2024,
https://www.greenmatch.co.uk/blog/is-silicone-bad-for-the-environment (last visited Aug. 5, 2024).

9.  The Pacifier is not 100% sustainable because there are components of its manufacture, distribution, use, and disposal that are not sustainable. For example, Defendants use the same manufacturing plant and distribution chain to distribute its sustainable products, NUK for Nature, like the Pacifier, and its non-sustainable products. This includes transportation methods such as planes and trucks, which emit fossil fuels and are not sustainable.  Defendants also utilize other companies like Amazon, Target, and Walmart (vendors that sell the Pacifier) to distribute the Pacifier.  These companies do not purport to be 100% sustainable or have a 100% sustainable distribution chain of their own accord.

10. The FTC discourages marketers, like Defendants, from overstating, either directly or by implication, environmental attributes or benefits, 16 CFR § 260.3(c), because it is likely to mislead consumers.[5]

11. The silicone in the Pacifier is also not 100% sustainable.  Defendants claim the Pacifiers have two types of sustainability certifications depending on the type of product: certification by REDcert[2] (silicone products) and International Sustainability & Carbon Certification ("ISCC") (plastic products).[6]  Neither of these

---

[5] *Environmentally Friendly Products: FTC's Green Guides*, Federal Trade Commission, https://www.ftc.gov/news-events/topics/truth-advertising/green-guides (last visited Aug. 5, 2024 ("The guidance [the Green Guides] provide includes: … how consumers are likely to interpret particular claims…)

[6] ISCC Certificates are publicly available on ISCC website: https://www.iscc-system.org/certification/certificate-database/all-certificates/.   NUK's ISCC Plus

certifying entities certified the Pacifier or the silicone in the Pacifier as "100%" sustainable.



[7, 8]

_____

Certificate, which the Pacifier purports to have, appears to have expired on January 1, 2023. *See* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://certificates.iscc-system.org/cert-pdf/ISCC-PLUS-Cert-DE100-11173122.pdf.

[7] *Id.*

[8] Because the Pacifier is one of NUK's silicone products, ISCC certification is not at issue. However, even if it were an ISCC Plus Certificate requires manufacturers to comply "major musts" and "minor musts" ("musts" being the compliance requirements), and specifically requires compliance will all "major musts" and compliance with only 60% of "minor musts"—a far cry from even 100% compliance with the certificate's requirements, let alone a finding of 100% sustainability. Audit Report, ISCC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://certificates.iscc-system.org/cert-audit/ISCC-PLUS-Cert-DE100-11173122_audit.pdf (last visited Aug. 5, 2024).

12.Defendants claim the silicone in the Pacifier is REDcert² mass-balance certified, but this does not support a "100% sustainable" or a "100% sustainable silicone" claim.   First, mass balance refers to the mixing of fossil-based and renewable raw materials into existing systems and production processes, while tracking their quantities and attributing them to specific products. [9]  Defendants' use of mass balancing means, by definition, they are not using 100% sustainable materials or producing 100% sustainable products. Rather, it is a process that reduces negative environmental impact, but does not eliminate it.   Second, REDcert² only requires a percentage of 20% of the fossil-based raw materials required to make the product to be verifiably replaced by an equivalent amount of sustainably certified biomass before it will certify products or allow manufacturers to use the REDcert² certification in advertising claims.[10]   And additionally, this purported certification related to the Pacifier does not consider the practices of extracting raw materials or processing the raw materials into the finished product.   These facts contradict any claim that the silicone in the Pacifier is 100% sustainable.

---

[9]  *Mass Balance Explained*, ISCC, May 15, 2024, https://www.iscc-system.org/news/mass-balance-explained/#:~:text=Mass%20balance%20provides%20manufacturers%20with,production%20process%20through%20certified%20bookkeeping (last visited Aug. 5, 2024).

[10]  *REDcert²: Scheme Principles for the certification of sustainable material flows for the chemical industry*, REDcert, available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.redcert.org/images/SP_RC%C2%B2C_Sustainable_material_flows_V1.0.pdf (last visited Aug. 5, 2024).

13. Defendants further overstated the Pacifier's sustainability because it is a highly disposable product. In fine print on the back of the Pacifier's package, Defendants recommend that consumers throw the Pacifier away after using it for two months. This contradicts the claim that the Pacifier is "100%" sustainable or "100%" durable. The two-month useful life of the Pacifier is the same as Defendants' other pacifier products.[11]

14. The Pacifier is a disposable product destined for a landfill after two short months—exactly the same as Defendants' other pacifiers that do not bear the environmental and sustainability claims.  The average child uses a pacifier until they are between ages two and four[12] and the recommendations for the number of pacifiers for parents of pacifier using children to own at any given time ranges from 4-10 pacifiers, depending on the child's age.[13]  This means that an average child would use and dispose of somewhere between 48 and 240 pacifiers and, in the case

---

[11] *NUK Pacifiers Care and Use*, NUK, https://www.nuk-usa.com/nuk-pacifiers-care-use.html (last visited Aug. 21, 2024).

[12] *Infant and Toddler Health*, Mayo Clinic, https://www.mayoclinic.org/healthy-lifestyle/infant-and-toddler-health/in-depth/pacifiers/art-20048140#:~:text=While%20most%20kids%20stop%20using,doctor%20or%20dentist%20for%20help (last visited Aug. 5, 2024).

[13] *How Many Pacifiers Do I Need? Discover the Best Practices for Your Baby*, Baby Doddle, Jan. 9, 2024, https://babydoddle.com/how-many-pacifiers-do-i-need/ (last visited Aug. 5, 2024).

of the silicone Pacifiers at issue here, these would all end up in a landfill where they will not be reused and will not biodegrade. [14]

15. Moreover, the Pacifier's packaging is generally confusing and misleading to consumers. The Pacifier's packaging places the words "Sustainable," "Silicone," and "Durable" near "100%" without specifically clarifying which word (sustainable, silicone, or durable) 100% is meant to describe. This is confusing for consumers because it is unclear whether the Pacifier is "100% Sustainable," "100% Sustainable Silicone," "100% Durable," or "100% Silicone Durable." Even so, Defendants' marketing is inherently misleading and false because the Pacifier is not 100% of any of these things (sustainable, sustainable silicone, or durable).

16. To put it simply, Defendants have dramatically overstated the environmental benefits of the Pacifier, and this is likely to, and did mislead consumers.

17. Consumers are increasingly aware of the impact their purchasing and consumption choices have on the environment. As a result, consumers have been

---

[14] The lifecycle and disposable nature of the Pacifier also contradicts the fact that NUK represents the Pacifier as 100% Durable. Manufacturers are discouraged from implying benefits if the benefits are negligible, as they are here, because it is likely to mislead consumers. 16 CFR § 260.3(c). Indeed, the durability (ability to last for a long time) of the Pacifier is irrelevant when the Product's recommended life, as recommended by NUK, is two months. Two months is not a long time and is the same duration as NUK's recommended replacement time for its pacifiers that do not bear the environmental and sustainability representations.

desiring products that are made from natural materials and are environmentally sounder, including products that cause less harm to the environment throughout the lifecycle of the product—from the sourcing of the raw materials to the final disposal of the product at the end of its useful life and every step in between. Consumers have spent billions of dollars within this category of "sustainable" and "natural" products.

18. Indeed, Nielson's Global Corporate Sustainability Report found that 66% of consumers would spend more on a product if it comes from a sustainable brand, and that jumps to 73% among millennials. One report found that 90% of Gen X consumers said they would pay at least 10% more for sustainable products.[15] Therefore, companies have a financial incentive to be more environmentally conscious, or at least appear to be.[16]

19. The consumer movement toward environmentally friendly products is generally called the "green" movement. Some companies, like Defendants, deceptively market their products as environmentally friendly, including through baseless claims of sustainability and naturalness, to profit off this growing green movement without actually going green or claiming to be "greener" than they actually are. This is known as "greenwashing." "Greenwashing" generally describes the act of companies misleading consumers regarding the company's environmental

---

[15] https://www.forbes.com/sites/gregpetro/2022/03/11/consumers-demand-sustainable-products-and-shopping-formats/?sh=4beb457b6a06
[16] *Id.*

practices or the environmental benefits of its products or services. Greenwashers do not make notable efforts toward an environmentally friendly marketplace, certainly not to the extent that they frequently claim.[17]   Defendants are greenwashing offenders.

20. Plaintiffs on behalf of themselves and a Class and Subclasses of similarly situated individuals, bring this class action to end Defendants' deceptive practices and to recover damages from Defendants' deception.

## JURISDICTION

21. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of the Class and Subclasses exceed the sum or value of $5,000,000.00 and there is diversity of citizenship between Plaintiffs, who, as alleged below, are citizens of different states than Defendants.

22. This Court has personal jurisdiction over Defendants because Defendants' corporate headquarters are located in this state, and they conduct business in this State. Defendants have marketed, advertised, distributed, and sold the products at issue in this State, permitting the exercise of jurisdiction by this Court.

---

[17] https://www.businessnewsdaily.com/10946-greenwashing.html.

23. Venue is appropriate in this district under 28 U.S.C. §§ 1391(a) and (b) because a substantial portion of the conduct at issue took place in the District.

## PARTIES

24. Plaintiff Moussa Kouyate is a citizen of the state of New York and resides in Bronx, NY. Plaintiff Kouyate purchased approximately six of the NUK 100% Sustainable Silicone Pacifiers in April 2024 from the Target in Bronx, New York. He purchased the Pacifier for his nephew.  Plaintiff Kouyate typically tries to purchase sustainable and environmentally friendly products.  Had he known the Pacifiers were not 100% Sustainable, he would not have purchased the Pacifiers or would have paid significantly less for the Pacifiers.

25. Plaintiff Genesis Johnson is a citizen of the state of New York and resides in New York, New York.  Plaintiff Johnson has purchased the NUK 100% Sustainable Silicone Pacifiers on several occasions throughout 2023 and 2024 at Target in New Jersey and also from Cookies in Bronx, New York.  She purchased the Pacifiers for her child, grandchild, and baby shower gifts. Plaintiff Johnson typically tries to purchase sustainable and environmentally friendly products.  Had she known the Pacifiers were not 100% Sustainable, she would not have purchased the Pacifiers or would have paid significantly less for the Pacifiers.

26. Plaintiff Angel Benitez is a citizen of the state of California and resides in Huntington Park, California. Plaintiff Benitez purchased the NUK 100%

Sustainable Silicone Pacifiers in April 2024 at the Target in Huntington Park, California. He purchased the Pacifiers for his daughter. Plaintiff Benitez typically tries to purchase sustainable and environmentally friendly products. Had he known the Pacifiers were not 100% Sustainable, he would not have purchased the Pacifiers or would have paid significantly less for the Pacifiers.

27. Plaintiff Eliabeth Zmrhal is a citizen of the state of Illinois and resides in Westmont, Illinois. Plaintiff Zmrhal has purchased the NUK 100% Sustainable Silicone Pacifiers on several occasions beginning in approximately August or September of 2023 and continuing through the present. She purchased the Pacifiers for her child and for others as gifts from Target, Jewel Osco, and Amazon. Plaintiff Zmrhal typically tries to purchase sustainable and environmentally friendly products. Had she known the Pacifiers were not 100% Sustainable, she would not have purchased the Pacifiers or would have paid significantly less for the Pacifiers.

28. Defendant NUK USA LLC ("Defendant NUK") is a limited liability company organized under the laws of Delaware, having its principal place of business at 6655 Peachtree Dunwoody Road, Atlanta, GA 30328. Defendant NUK is a manufacturer and distributor of children's products throughout the United States and shares a corporate parent with Defendant Graco. NUK is a wholly owned subsidiary of Newell Brands Inc. Defendant NUK is a distributor of NUK pacifiers in the United States.

29. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known, including the members of NUK USA LLC.

30. Defendant Graco Children's Products Inc. ("Defendant Graco") is a corporation organized under the laws of Delaware, having its principal place of business located at 6655 Peachtree Dunwoody Road, Atlanta, GA 30328. Defendant Graco is in the business of manufacturing, marketing, and selling children's products, including pacifiers, throughout the United States.

31. Defendant Newell Brands Inc. is a Delaware corporation with its principal place of business located at 6655 Peachtree Dunwoody Road, Atlanta, GA 30328. The NUK brand of pacifiers was originally marketed and sold by the Gerber Products Company. In or about October 2008, Nestle sold part of its Gerber business to Total S.A., which owned various businesses including Mapa Spontex, a global manufacturer and distributor of baby care and home care products. In or about April 2010, Jarden Corporation acquired Mapa Spontex from Total S.A., including Total S.A.'s Gerber business segment, which included NUK pacifiers. In or about December 2015, Newell Rubbermaid acquired Jarden Corporation. When the

acquisition closed in or about April 2016, the combined corporation was renamed Newell Brands Inc.

32. Defendants have marketed, advertised, and sold NUK pacifiers, including NUK 100% Sustainable Silicone pacifiers, in this district, and throughout the United States.

## FACTUAL ALLEGATIONS

### A.    Greenwashing

33. Greenwashing refers to the "activities by a company or an organization that are intended to make people think that it is concerned about the environment, even if its real business practice actually harms the environment," or is not as "green" and the company claims to be. [18]

34. Companies like Defendants are incentivized to greenwash their businesses and products because consumers, like Plaintiffs, desire to purchase products that are better for the environment because they result in less pollution, are less energy intensive, and require fewer natural resource inputs. In other words, in a world of disposable products, consumers are looking for something they can feel good about buying, or at least better about buying. This kind of consumer attitude

---

[18] *Greenwashing*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/greenwash_v?tab=meaning_and_use#11644342, (last visited April 16, 2024).

has substantially impacted consumer buying behavior and, as a result, substantially impacted companies' marketing campaigns.

35. Indeed, Consumers interested in more environmentally friendly products are challenged and tricked every day by companies' ever-evolving deceptive greenwashing claims.

36. In a released study, the environmental consulting group TerraChoice Environmental Marketing found that 98% of more than 2,000 products it surveyed in North America made false and misleading environmental claims by committing one or more of what it classified as the "Seven Sins of Greenwashing"[19]:

    a. The Sin of the Hidden Trade-off – committed by suggesting a product is "green" based on an unreasonably narrow set of attributes without attention to other important environmental issues;

    b. The Sin of No Proof – committed by an environmental claim that cannot be substantiated by easily accessible supporting information or by a reliable third-party certification;

    c. The Sin of Vagueness – committed by every claim that is so poorly defined or broad that its real meaning is likely to be misunderstood by the consumer;

---

[19] https://www.ul.com/insights/sins-greenwashing.

d.  The Sin of Irrelevance – committed by making an environmental claim that may be truthful but is unimportant or unhelpful for consumers seeking environmentally preferable products;

e.  The Sin of Lesser of Two Evils – committed by claims that may be true within the product category but that risk distracting the consumer from the greater environmental impacts of the category as a whole;

f.  The Sin of Fibbing – committed by making environmental claims that are simply false; and

g.  The Sin of Worshipping False Labels – committed by a product that, through either words or images, gives the impression of third-party endorsement where no such endorsement actually exists or uses fake labels.

37. Faced with growing evidence that some companies, like Defendants, will do whatever it takes to appear environmentally conscious, sustainable, and eco-friendly in order to benefit their bottom line, the United States Federal Trade Commission ("FTC") created "Green Guides" to help companies avoid making misleading and deceptive claims.[20]  These guides are based on extensive consumer

---

[20] *See generally* 16 C.F.R. § 260—Guide for the User of Environmental Marketing Claims.

research and offer guidance to companies, and further provide guidance in cases like this one, where consumer were likely to be misled by Defendants' environmental representations. Indeed, the FTC published the Green Guides as guidance "to help marketers avoid making environmental marketing claims that are unfair or deceptive" under the FTC Act. 16 C.F.R. § 260.1.

**B.      FTC Regulation of Greenwashing and the Green Guides**

38. Section 5 of the FTC Act prohibits deceptive acts and practices in or affecting commerce. A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions. FTC Policy Statement on Deception, 103 FTC 174 (1983).

39. In the context of environmental marketing claims, marketers must ensure that all reasonable interpretations of their claims are supported by "a reasonable basis," which often requires competent and reliable scientific evidence. Such evidence consists of tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results. Such evidence should be sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body

of relevant and reliable scientific evidence, to substantiate that each of the marketing claims is true.[21]

40. The FTC promulgated regulations called the "Green Guides" to establish how reasonable consumers would interpret environmental claims and to help businesses avoid making misleading environmental claims.[22]  This guidance provides insight into consumer deception. The regulation provides in pertinent part:

> Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits and may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims.

16 C.F.R. § 260.4(b). As is relevant here, "100% Sustainable" is precisely the type of unqualified general environmental benefit claim that the FTC cautions marketers not to make.

41. According to the FTC, the following general principles apply to environmental marketing claims.[23]

_____

[21] https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguides.pdf

[22] 16 C.F.R § 260.1(d) "The examples [provided in the Green Guides] provide the Commission's views on how *reasonable consumers* likely interpret certain claims." (emphasis added)).

[23] 16 C.F.R. § 260.3.

a. <u>Qualifications and Disclosures</u>: To prevent deceptive claims, qualifications and disclosures should be clear, prominent, and understandable.  To make disclosures clear and prominent, marketers should use plain language and sufficiently large type, should place disclosures in close proximity to the qualified claim, and should avoid making inconsistent statements or using distracting elements that could undercut or contradict the disclosure.

b. <u>Distinction Between Benefits of Product, Package, and Service:</u> Unless it is clear from the context, an environmental marketing claim should specify whether it refers to the product, the product's packaging, a service, or just to a portion of the product, package, or service.  In general, if the environmental attribute applies to all but minor, incidental components of a product or package, the marketer need not qualify the claim to identify that fact.  However, there may be exceptions to this general principle.  For example, if a marketer makes an unqualified recyclable claim, and the presence of the incidental component significantly limits the ability to recycle the product, the claim would be deceptive.

    i.    Example: A plastic package containing a new shower curtain is labeled "recyclable" without further elaboration.  Because the context of the claim does not make clear whether it refers to the plastic package or the shower curtain, the claim is

21

deceptive if any part of either the package or the curtain, other than minor, incidental components, cannot be recycled.

c. <u>Overstatement of Environmental Attribute</u>: An environmental marketing claim should not overstate, directly or by implication, an environmental attribute or benefit.  Marketers should not state or imply environmental benefits if the benefits are negligible.

  i. Example: A trash bag is labeled "recyclable" without qualification.  Because trash bags ordinarily are not separated from other trash at the landfill or incinerator for recycling, they are highly unlikely to be used again for any purpose.  Even if the bag is technically capable of being recycled, the claim is deceptive since it asserts an environmental benefit where no meaningful benefit exists.

  ii. An area rug is labeled "50% more recycled content than before." The manufacturer increased the recycled content of its rug from 2% recycled fiber to 3%. Although the claim is technically true, it likely conveys the false impression that the manufacturer has increased significantly the use of recycled fiber.

d. <u>Comparative Claims</u>: Comparative environmental marketing claims should be clear to avoid consumer confusion about the comparison. Marketers should have substantiation for the comparison.

  i. Example: An advertiser notes that its glass bathroom tiles contain "20% more recycled content."  Depending on the context, the claim could be a comparison either to the advertiser's immediately preceding product or to its competitors' products. The advertiser should have substantiation for both interpretations.  Otherwise, the advertiser should make the basis for comparison clear, for example, by saying "20% more recycled content than our previous bathroom tiles."

e. <u>Biodegradable Claims:</u> It is deceptive to misrepresent, directly or by implication, that a product or package is degradable, biodegradable, oxo-degradable, oxo-biodegradable, or photodegradable.  A marketer making an unqualified degradable claim should have competent and reliable scientific evidence that the entire item will completely break down and return to nature within a reasonably short period of time after customary disposal.

   i.   Example: A marketer advertises its trash bags using an unqualified "degradable" claim.  The marketer relies on soil burial tests to show that the product will decompose in the presence of water and oxygen.  Consumers, however, place trash bags into the solid waste stream, which customarily terminates in incineration facilities or landfills where they will not degrade within one year.  The claim is, therefore, deceptive.

f. <u>Recyclable Claims:</u> It is deceptive to misrepresent, directly or by implication, that a product or package is recyclable.  A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item.

   i.   Example: A nationally marketed plastic yogurt container displays the Resin Identification Code (RIC) (which consists of a design of arrows in a triangular shape 6 containing a number in the center and an abbreviation identifying the component plastic resin) on the front label of the container, in close proximity to the

product name and logo.  This conspicuous use of the RIC
constitutes a recyclable claim.  Unless recycling facilities for this
container are available to a substantial majority of consumers or
communities, the manufacturer should qualify the claim to
disclose the limited availability of recycling programs.

42. The Green Guides also provide additional examples of marketing

claims to "provide the Commission's views on how reasonable consumers likely

interpret certain claims."[24]  The FTC provided the following relevant examples of

general environmental benefit claims that are likely to deceive the reasonable

consumer:[25]

- The brand name "Eco-friendly" likely conveys that the product has far
  reaching environmental benefits and may convey that the product has no
  negative environmental impact.  Because it is highly unlikely that the
  marketer can substantiate these claims, the use of such a brand name is
  deceptive.

- A brand name like "Eco-safe" would be deceptive if, in the context of the
  product so named, it leads consumers to believe that the product has
  environmental benefits which cannot be substantiated by the manufacturer.
  The claim would not be deceptive if "Eco-Safe" were followed by clear
  and prominent qualifying language limiting the safety representation to a
  particular product attribute for which it could be substantiated and
  provided that no other deceptive implications were created by the context.

- A product label contains an environmental seal, either in the form of a
  globe icon, or a globe icon with only the text "Earth Smart" around it.
  Either label is likely to convey to consumers that the product is
  environmentally superior to other products.  If the manufacturer cannot
  substantiate this broad claim, the claim would be deceptive.  The claims
  would not be deceptive if they were accompanied by clear and prominent
  qualifying language limiting the environmental superiority representation

---

[24] 16 C.F.R. § 260.1(d).
[25] 16 C.F.R. § 260.4.

to the particular product attribute or attributes for which they could be substantiated, provided that no other deceptive implications were created by the context.

- A marketer states that its packaging is now "Greener than our previous packaging." The packaging weighs 15% less than previous packaging, but it is not recyclable, nor has it been improved in any other material respect. The claim is deceptive because reasonable consumers likely would interpret "Greener" in this context to mean that other significant environmental aspects of the packaging also are improved over previous packaging.

- A manufacturer's Web site states, "Eco-smart gas-powered lawn mower with improved fuel efficiency!" The manufacturer increased the fuel efficiency by 1/10 of a percent. Although the manufacturer's claim that it has improved its fuel efficiency technically is true, it likely conveys the false impression that the manufacturer has significantly increased the mower's fuel efficiency.

43. As alleged herein, Defendants have engaged in the exact marketing and sales behavior that the FTC and its Green Guides classify as deceptive and likely to deceive reasonable consumers.

## C.   Consumers and Green Products

44. Consumers are regularly choosing more environmentally friendly products.  In fact, some consumers are changing their buying behavior to reduce the impact of their consumption habits on the environment, choosing environment-friendly consumption behavior, often called green consumption.[26]

---

[26] https://www.emerald.com/insight/content/doi/10.1108/RAUSP-08-2018-0070/full/html.

45.Today, consumers across all generations—from Baby Boomers to Gen Z—are willing to spend more for sustainable products, and the percentages of consumers in those generations willing to pay more for sustainable products is growing.  Now, at least 90% of Gen X consumers said that they would be willing to spend an extra 10% or more for sustainable products.[27]

46.A desire to help the environment is the primary reason consumers purchase sustainable products and brands.  Almost 30% say they want to improve the environment, with 23% wishing to reduce production waste, and 22% wishing to reduce their carbon footprint.[28]  Consumers care about the environment and are purchasing environmentally sound products to support those interests.

47.Green labels and product marketing impact consumer buying decisions. Marketing and labels allow consumers to make comparisons among products and services in the category and decide their preference.[29]  Indeed, labels make it easier for consumers to identify green products when they are shopping, reducing consumers' purchase time.  Consumers consider the information related to the environmental attributes of products that companies, like Defendant, put on their

---

[27] https://www.forbes.com/sites/gregpetro/2022/03/11/consumers-demand-sustainable-products-and-shopping-formats/?sh=551188856a06.

[28] *Id.*

[29] https://majorsustainability.smeal.psu.edu/green-labelling/

label and use that information to make a purchase decision.[30]  Thus, labels and green marketing tactics, like those used by Defendant, impact consumer buying behavior.

48.  "Sustainable" and "sustainability" are commonly understood by Plaintiffs and similar consumers to refer to "forms of human activity (esp. of an economic nature) in which environmental degradation is minimized, esp. by avoiding the long-term depletion of natural resources." Oxford English Dictionary. And a product that is "100% Sustainable" as marketed by Defendants would be synonymous to a reasonable consumer with the characteristics of reusability, recyclability, composability, sustainable production, minimal packaging, and free from toxins that otherwise negatively impact the environment.

**D.    Defendants' Business Activities**

49.  Defendants advertise and sell the 100% Sustainable Silicone Pacifier through national retailers like Target, Walmart, and Amazon, as well as directly to consumers through its website, NUK-USA.com.

50.  The Pacifier is sold on Target's website.  The following images show the Pacifier for sale on Target's website.

---

[30] https://www.ijstr.org/final-print/dec2019/The-Effect-Of-Green-Marketing-Strategy-On-Purchasing-Decisions-A-Review-Of-Previous-Research.pdf



31

32

---

31 https://www.target.com/p/nuk-for-nature-sustainable-silicone-pacifier-0-6m-neutral-3ct/-/A-86767006#lnk=sametab (last visited Apr. 17, 2024).
32 https://www.target.com/p/nuk-for-nature-sustainable-silicone-pacifier-0-6m-neutral-3ct/-/A-86767006#lnk=sametab (last visited Apr. 17, 2024).

51. The Pacifier is sold on Walmart's website, but the website describes the Pacifier as "Eco" and it is sold from a third party.  Walmart acts as the fulfiller.[33]

52. The Pacifier is sold on Amazon's website.  Below are images of the NUK Pacifier on Amazon's website.



34

---

[33] https://www.walmart.com/ip/NUK-For-Nature-Eco-Silicone-Comfy-Pacifier-Size-1-Neutral-0-6-Months/568303698?from=/search (last visited May 15, 2024). Note: The Pacifier is available in various sizes and combinations (1 pacifier, 2 pacifiers, 3 pacifiers, etc.). Plaintiff's claims extend to any variation of the Pacifier where Defendants made the representations at issue.
[34] https://www.amazon.com/NUK-NatureTM-Comfy-Silicone-Pacifier/dp/B0BHKY3WBC/ref=sr_1_4?crid=1MGOACCNTE5DA&dib=eyJ2Ijoi MSJ9.deQSd_L1Ie0m_gSnIFAHEWmZV1gHenoav3h5Yq5eyVked2YW02e4Diu gQuBys2oS62DMjvb7qiMVQ3iCjl76XHRAPumA8j0o3AIZUu2Q9nPCsZrFHvl YDeqhNY1JTryzvHQzQQXE7R32xRFvWTtsLzO2aWU3iTOI9N2PRxCoPz0Ls YxnOPVDBYmI1GapBYK0eL5fAkLOaDdTdIfrfvpVeytACg3I4BFLDZbZzHsC 3ywggfZMH_OLioHz01oD0olM_ZuY4ETHajrs2BtKvynUnnMHVcj6Wi46fDiA

---

OPzDhq0.7mkdweDJU2izkBznl_W7xpXy1O0RnWRif4G6XF4adfQ&dib_tag=se
&keywords=Nuk%2Bfor%2BNature%2B100%25%2BSustainable%2BPacifiers&
qid=1713385481&sprefix=nuk%2Bfor%2Bnature%2B100%25%2Bsustainable%2
Bpacifiers%2Caps%2C93&sr=8-4&th=1 (last visited Apr. 17, 2024).

53. The Pacifier is sold in Target and Walmart stores.  Below are images of the NUK packaging in a Target store.







**NUK®**
*For Nature*

**Big changes start with small steps.™**

That's why we created the NUK for Nature™ collection, to little by little make a big impact. With 70 years of experience, we are proud to do our part to design a better future for our little ones and their planet.

✤ Silicone pacifier made with natural raw materials according to REDcert2 mass-balance requirements

✤ Recyclable paperboard packaging

✤ Plastic blister packaging made with more than 70% recycled content

**Les grands changements commencent par de petits pas.**

C'est pourquoi nous avons créé NUK for Nature™ afin que, petit à petit, nous puissions avoir un grand impact. Avec nos 70 ans d'expérience, nous sommes fiers de faire notre part pour concrétiser un avenir meilleur pour nos tout-petits et leur planète.

✤ Sucette en silicone fabriquée avec des matières premières naturelles selon les exigences de bilan massique REDcert2

✤ Emballage en carton recyclable

✤ Emballage à coque en plastique composé à plus de 70 % de matériaux recyclés

**Care:** Prior to first use, sanitize by boiling in water for 5 minutes. For daily cleaning, wash with hot water and mild detergent then rinse clean. Dishwasher-safe (top rack). Water may get inside the nipple during cleaning, and can be removed by squeezing the nipple. For hygiene and safety, replace pacifiers after 2 months of use. **Note:** If the pacifier becomes lodged in the mouth, remove it as gently as possible. It is designed so that it cannot be swallowed. **Caution:** Do not attach ribbons or cords through ventilation holes. Do not leave baby unattended while using a pacifier. **Warning:** To prevent possible choking hazard, test before each use by pulling the nipple in all directions checking for cuts or tears. Do not use if the nipple is damaged.

**Entretien:** Avant la première utilisation, désinfectez en faisant bouillir dans l'eau pendant cinq minutes. Pour le nettoyage quotidien, lavez à l'eau chaude avec un détergent doux et rincez soigneusement. Va au lave-vaisselle (plateau supérieur). De l'eau peut s'infiltrer dans la tétine au cours du nettoyage, laquelle peut être retirée en pinçant la tétine. Par souci d'hygiène et de sécurité, remplacez les sucettes après deux mois d'utilisation. **Remarque:** Si la sucette reste coincée dans la bouche de votre enfant, sortez-la le plus délicatement possible. Elle est conçue de sorte à ne pas pouvoir être avalée. **Attention:** Ne passez jamais de rubans ou de cordons dans les trous d'aération. Ne laissez pas un enfant avec une sucette sans surveillance. **Mise En Garde:** Pour éviter les risques de suffocation, vérifiez qu'il n'y a pas de coupure ou de déchirure dans la tétine avant chaque utilisation en l'étirant dans tous les sens. N'utilisez pas la tétine sielle est endommagée.

REDcert²

**newell** BRANDS

**NUK.com**
**NUK-Canada.ca**
**1-888-NUK-1238**

PRODUCT OF / PRODUIT DE: GRACO CHILDREN'S PRODUCTS INC. ©2022 GRACO CHILDREN'S PRODUCTS INC. 6655 PEACHTREE DUNWOODY ROAD, ATLANTA, GA 30328. MADE IN USA. FABRIQUE AUX ÉTATS-UNIS.

USA & CAN
É.-U. et CAN

PAPER PAPIER
CARD CARTE

PLASTIC PLASTIQUE
TRAY PLATEAU

2198850

8 85131 70221 0

54. The front of the package for the Pacifier includes representations that it is "NUK For Nature" and "100% Sustainable Silicone."  These are prominent representations, on the front of the label and package, which would immediately catch a reasonable consumer's attention.

55. In fine print on the back of the Pacifier's package, Defendants instruct consumers "to replace the [Pacifier] after 2 months."  Defendants make the same 2-month disposal recommendation with their other pacifier products that do not bear the environmental and sustainability representations. This means, according to Defendant, consumers should be throwing the Pacifier away and buying a new one every 2 months—the complete opposite of the sustainability and durability reasonable consumers like Plaintiffs would expect in a "100%" sustainable" and durable product.

56. The claims on the Pacifier's packaging, both front and back, are misleading to consumers for several  reasons, including, but certainly not limited to: (1) claiming a disposable, non-biodegradable, non-recyclable, and non-reusable product   is "100% Sustainable" or 100% Sustainable Silicone" is inherently misleading to consumers, and (2) using the phrase "100% Sustainable Silicone" on the packaging implies environmentally friendly qualities beyond what the Pacifier offers.

57.Product sustainability, especially a claim of "100% Sustainable," implies the product and the materials that compose the product do not negatively impact the environment and generally pertains to the effect the business or product has on the environment.[35]  Sustainability is also commonly attributed to reducing waste and promoting responsible production and consumption.[36]  This is directly contradicted by the Pacifier's recommended two-month lifespan and also, Defendant NUK's vow to not use recycled materials in its product production because both contribute to waste. [37]

58.Moreover, the claim "100% Sustainable Silicone" conveys to a reasonable consumer that the Pacifier has far-reaching environmental benefits and may also convey the Pacifier has no negative environmental impact. *See* Green Guides, § 260.4(b). The FTC cautions companies against using "100%" claims to describe general environmental benefits because it is "highly unlikely that marketers

---

[35] *What Does "Sustainability" Mean in Business?*, Harvard Business School Online, https://online.hbs.edu/blog/post/what-is-sustainability-in-business (last visited Apr. 17, 2024).

[36] *How important is sustainability to shoppers and consumers?,* SPARK EMOTIONS, (June 6, 2023), https://sparkemotions.com/2023/06/06/how-important-is-sustainability-to-shoppers-and-consumers/ (last visited Apr. 17, 2024).

[37] *NUK Quality—giving the most we can for what's important to you.*, NUK, https://www.nuk.co.uk/en_gb/about-nuk/nuk-research (last visited Apr. 23, 2024) ("The environment also plays an important role for NUK – environmental impact and work safety are constantly being checked. In the process, environmental awareness is never put before the well-being of the children. That is why, at NUK, we do not use recycled materials as this is the only way to ensure all-out product safety.")

can substantiate all reasonable interpretations of these claims."[38] And if the claims cannot be substantiated, they are misleading. Defendants' 100% claims are unsubstantiated here and are egregious overstatements of the environmental benefits of the Pacifier.  Indeed, not even the purported certification of the Pacifier, the REDcert² certification, provides support for Defendants' 100% sustainable claims. That certification only relates to raw materials and is limited to mass balancing.  By definition, mass balancing is a method to reduce environmental impact, not eliminate it.  Defendants touting their purported certification on the back of the Pacifier's packaging is further evidence of misleading marketing tactics.

59. The Pacifier has negative impacts to the environment, making any "100%" claim related to the environment misleading. Silicone is made by combining the element of silicon, derived from quartz and sand, with chemical compounds at high heat, and then treating the resulting material with water. Specifically, silicone is generally produced from hydrocarbons and manufactured by using high heats, raising concerns with carbon emissions (i.e., the hydrocarbon) and fossil fuels (i.e., generating high heat). The methods used to produce silicone are energy- and resource-intensive. Defendants purport to use mass balancing, which incorporates

---

[38] *Guides for the Use of Environmental Marketing Claims*, FEDERAL REGISTER, THE DAILY JOURNAL OF THE UNITED STATES GOVERNMENT, https://www.federalregister.gov/documents/2012/10/11/2012-24713/guides-for-the-use-of-environmental-marketing-claims (last visited Apr. 17, 2024).

renewable sources of energy with non-renewable sources, so this, by definition, undermines a "100%" sustainability claim.

60. Commercially viable silicone production uses significant amounts of energy and negatively impacts natural resources. For example, silicone is made from sand, which is extracted from the Earth through mining, degrading the environment.[39] The sand must be transported to the silicone production facility. To be processed into silicone, the sand must be heated to very high temperatures, typically using carbon-based fuels, or other sources of energy like forest biproducts.[40] Once the sand has been processed into silicone, the silicone must be transported to the final product's manufacturing facility.

61. After the energy and resource intensive production, the Pacifier is only used for a two-month period and then "replaced," meaning the Pacifier is disposable and generates a high rate of turnover—buy, throw away, repeat, just like Defendants' other pacifier products.

62. At the end of its use life (again, a brief two-month period) the Pacifier is thrown away, left to rot in a landfill because silicone is not reusable, recyclable,

---

[39] Ashutosh Mishra, *Impact of Silica Mining on Environment*, 8 J. Geography & Regional Plan. 150-56 (2015), available at https://academicjournals.org/journal/JGRP/article-abstract/915EC0C53587. )
[40] *From Sand to Shelf: Is Silicone Eco-Friendly?*, GREENMATCH, https://www.greenmatch.co.uk/blog/is-silicone-bad-for-the-environment (last visited May 14, 2024).

or biodegradable.[41]   Silicone products must be disposed of in the trash because recycling silicone is not available for most consumers.[42]   And also, no portion of the Pacifier is reusable because Defendant NUK does not use recycled pacifiers or any recycled materials to manufacture its baby products.

63. The "For Nature 100% Sustainable Silicone" Pacifier costs significantly more than the classic pacifiers.  Target sells a 3ct package of the "For Nature 100% Sustainable Silicone" Pacifier for $9.99. Consumers can purchase a 3ct package of "NUK Classic Pacifier" from Target for $4.99.  An image displaying the "Classic" pacifiers for sale on Target's website is below. [43]

---

[41] *Id.*

[42] Samira Tasneem, *Is Silicone Biodegradable – Savior or Sustainability Setback?* GREENCITIZEN, (Nov. 1, 2023), https://greencitizen.com/blog/is-silicone-biodegradable/#:~:text=NO%2C%20silicone%20is%20NOT%20a,years%20to%20degrade%20in%20nature.; *see also Silicone Products*, NYS RECYLOPEDIA, https://recyclerightny.recyclist.co/guide/silicone-products/?embeddedguide=true (last visited Apr. 23, 2024) ("Silicone cannot currently be processed by most recycling facilities.")

[43] https://www.target.com/p/nuk-classic-pacifier-value-pack-3ct/-/A-88882631?preselect=86767012#lnk=sametab (last visited Apr. 23, 2024).

38



64. The NUK Classic pacifiers are also made of silicone. Details, including that the NUK Classic pacifier is made of silicone are shown in the below image from Target's website.[44]



## E.    Consumers Experiences with the Sustainable Silicone Pacifiers

---

[44] https://www.target.com/p/nuk-classic-pacifier-value-pack-3ct/-/A-88882631?preselect=86767012#lnk=sametab (last visited Apr. 23, 2024).

65.Plaintiffs and the Class Members were misled by Defendants' marketing and labeling of the NUK for Nature 100% Sustainable Silicone pacifiers.

66.Consumers placed value on the sustainability and environmental representations made by Defendants.

67.Plaintiffs decided to and did purchase the Pacifier because of the sustainability claims made on the product's label and the product's description and paid more for those pacifiers than the classic NUK pacifiers.

68.As alleged, each Plaintiff purchased the Pacifier at Target, Amazon, Walmart, or those stores' respective online stores.

69.Each Plaintiff saw the sustainability claims on the packaging, including that the product was "for nature," "100% Sustainable Silicone," and "100% Sustainable" and would not have purchased or would have paid significantly less for the pacifiers had they know they were not, in fact, 100% sustainable.

## CLASS ALLEGATIONS

70.Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of all others similar situated, as representative of the following Class and Subclasses:

**Nationwide Class:** All citizens of the United States who purchased any of the NUK branded "For Nature 100% Sustainable Silicone" pacifier(s), within the applicable statute of limitations, until the date notice is disseminated.

**California Subclass:** All citizens of California who purchased a NUK branded "For Nature 100% Sustainable Silicone" pacifier(s), within the applicable statute of limitations, until the date notice is disseminated.

**New York Subclass:** All citizens of New York who purchased a NUK branded "For Nature 100% Sustainable Silicone" pacifier(s), within the applicable statute of limitations, until the date notice is disseminated.

**Illinois Subclass:** All citizens of Illinois who purchased a NUK branded "For Nature 100% Sustainable Silicone" pacifier(s), within the applicable statute of limitations, until the date notice is disseminated.

71.Excluded from the Class and Subclasses are Defendants; their officers, directors, and employees; any entity in which either Defendant has a controlling interest in, is a parent or subsidiary of, or which is otherwise controlled by any of the Defendants; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assignees of any of the Defendants. Also excluded are the Judges and Court personnel in this case and any members of their immediate families.

72.Plaintiffs reserve the right to modify and/or amend the Class or Subclass definitions, including but not limited to creating additional subclasses, as necessary.

73. All members of the proposed Class and Subclasses are readily identifiable through Defendants' records.

74. **Numerosity.**   The members of the Class and Subclasses are so numerous that joinder of all members of the Class and Subclasses is impracticable. Plaintiffs are informed and believe that the proposed Class and Subclasses include millions of people. The precise number of Class and Subclass members is unknown to Plaintiffs but may be ascertained from Defendant's records.

75. **Commonality and Predominance.** This action involves common questions of law and fact to the Plaintiffs and Class and Subclass members, which predominate over any questions only affecting individual Class and Subclass members. These common legal and factual questions include, but are not limited to:

  a. Whether Defendants engaged in unlawful, unfair, or deceptive business practices by advertising and selling the NUK For Nature 100% Sustainable Silicone Pacifier;

  b. Whether Defendants' conduct of advertising and selling the NUK For Nature 100% Sustainable Silicone Pacifier as "sustainable," "100% sustainable," and "for nature" when it is not constitutes an unfair method of competition, or unfair or deceptive act or practice leading to a Breach of Express Warranty, Unjust Enrichment, Negligent

Misrepresentation, and violations of various consumer protection statutes;

c. Whether Defendants used deceptive representations and omissions in connection with the sale of the 100% Sustainable Silicone Pacifier leading to a Breach of Express Warranty, Unjust Enrichment, Fraud, Negligent Misrepresentation, and violations of various consumer protection statutes;

d. Whether Defendants represented the 100% Sustainable Silicone Pacifier has characteristics or quantities that it does not have leading to a Breach of Express Warranty, Unjust Enrichment, Fraud, Negligent Misrepresentation, and state consumer protection statues.

e. Whether Defendants' advertisement of the 100% Sustainable Silicone Pacifier with the intent not to sell it as advertised constituted Breach of Express Warranty, Unjust Enrichment, Fraud, Negligent Misrepresentation, and state consumer protection statues.

f. Whether Defendants' labeling and advertising of the 100% Sustainable Silicone Pacifier constituted Breach of Express Warranty, Unjust Enrichment, Fraud, Negligent Misrepresentation, and state consumer protection statutes.

g.  Whether Defendants knew or by the exercise of reasonable care should have known their labeling and advertising constituted Breach of Express Warranty, Unjust Enrichment, Fraud, Negligent Misrepresentation, and violations of state consumer protection laws.

h.  Whether Plaintiffs and the Class paid more money for the NUK For Nature 100% Sustainable Silicone Pacifier than they would have had Defendants not engaged in the misconduct described herein;

i.  Whether Defendants' conduct constituted breach of express warranty;

j.  Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief; and

k.  Whether Defendants were unjustly enriched by their unlawful conduct.

76. Typicality.  Defendants engaged in a common course of conduct giving rise to the claims asserted by Plaintiffs on behalf of themselves and the Class. Defendants' unlawful, unfair, and/or fraudulent actions concerned the same business practices described herein irrespective of where they occurred or were experienced. Individual questions, if any, are slight by comparison in both quality and quantity to the common questions that control this action.  Plaintiffs' and the Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

77.Adequacy.  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and have retained counsel experienced in complex consumer class action litigation and intend to prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests to those of the Class.

78.Superiority.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants.  The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims.  There will be no difficulty in managing this action as a class action, and the disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Breach of Express Warranty**
*By All Plaintiffs Against Defendants*

79.Plaintiffs reassert the allegations set forth above in paragraphs 1 through 78 and incorporate such allegations by reference herein.

80.Each of the named Plaintiffs brings this cause of action against Defendants on behalf of the Nationwide Class and, in the alternative, state subclasses

based upon the states in which they purchased the NUK For Nature 100% Sustainable Silicone Pacifier.

81. The laws of the states in which Plaintiffs purchased the NUK For Nature 100% Sustainable Silicone Pacifier are substantially similar so as to warrant certification of a Nationwide Class or, in the alternative, the certification of state subclasses as to particular elements of Plaintiffs' breach of warranty claims.

82. Express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain.  Such warranties can also be created based upon descriptions of the goods that are made as part of the basis of the bargain that the goods shall conform to the description.

83. Each of the Plaintiffs formed a contract with Defendants at the time they purchased the NUK For Nature 100% Sustainable Silicone Pacifier. The terms of that contract include the claims and affirmations of fact that Defendants made on the NUK For Nature 100% Sustainable Silicone Pacifier's packaging and through marketing and advertising, including the environmental claims described above and the very name of the product, "NUK For Nature 100% Sustainable Silicone Pacifier."

84. The marketing and advertising constitute express warranties and became a part of the basis of the bargain, and they are part of the standardized

contracts between Plaintiffs and Class members on the one hand, and Defendants, on the other.

85. In addition, or in the alternative, to the formation of an express contract, Defendants made each of their above-described representations, including the environmental claims and name of the product as "NUK For Nature 100% Sustainable Silicone Pacifier," to induce Plaintiffs and Class members to rely on such representations.

86. Defendants' environmental claims were material, and Plaintiffs and Nationwide Class members did rely and were reasonable in relying upon such representations in making their purchases of the NUK For Nature 100% Sustainable Silicone Pacifier.

87. Defendants have breached their express warranties about the NUK For Nature 100% Sustainable Silicone Pacifier because the representations set forth herein, including the environmental claims, are false and misleading.

88. Defendants failed to ensure that the material representations they made—and continue to make—to consumers were true. As a result of this systemic failure of oversight to ensure the truthfulness of the representations of the product label and relevant marketing and advertising, consumers purchased the NUK For Nature 100% Sustainable Silicone Pacifier from companies that do not have the positive environmental impact that they claim to.

89. Defendants cannot make the environmental claims they make to consumers regarding their NUK For Nature 100% Sustainable Silicone Pacifier because they cannot verify whether those claims are accurate. Nor did Defendants enforce these promises through adequate oversight. Accordingly, Defendants convinced consumers to purchase the NUK For Nature 100% Sustainable Silicone Pacifier product and ultimately charged consumers a price premium for express—but empty—promises.

90. Defendants breached their express warranties about the NUK For Nature 100% Sustainable Silicone Pacifier because the representations as set forth herein were false and misleading.

91. Plaintiffs and Nationwide Class members expected and would have been reasonable in expecting that Defendants ensured the statements on the NUK For Nature 100% Sustainable Silicone Pacifier label and the relevant marketing and advertising for the product were truthful regarding the environmental claims. However, Plaintiffs and Nationwide Class members have not received the benefit of their bargain, as it has been discovered that Defendants' environmental claims are false and misleading.

92. As a result of Defendants' breach of their express warranties, Plaintiffs and the Nationwide Class members were damaged in the amount of the price they purchased for the NUK For Nature 100% Sustainable Silicone Pacifier, or in an

amount equal to the price premium that they paid when they purchased the NUK For Nature 100% Sustainable Silicone Pacifier, in an amount to be proven at trial.

93. Plaintiffs, on behalf of themselves and class members, pray for relief as set forth below.

## SECOND CLAIM FOR RELIEF
### Unjust Enrichment
*(On behalf of all Plaintiffs and the Nationwide Class)*

94. Plaintiffs reassert the allegations set forth above in paragraphs 1 through 78 and incorporate such allegations by reference herein.

95. Plaintiffs bring this claim for unjust enrichment against Defendants in the alternative to their breach of express warranty claim.

96. Plaintiffs and Nationwide Class members conferred benefits on Defendants by purchasing the NUK For Nature 100% Sustainable Silicone Pacifier, including by paying a price premium for the NUK For Nature 100% Sustainable Silicone Pacifier.

97. Defendants have been unjustly enriched by retaining the revenues derived from Plaintiffs and the Class members' purchases of the NUK For Nature 100% Sustainable Silicone Pacifier. Retention of the monies under these circumstances is unjust and inequitable because Defendants' labeling of the NUK For Nature 100% Sustainable Silicone Pacifier was misleading to consumers, which caused injuries to Plaintiffs and the Nationwide Class members because they would

not have purchased or would have paid less for the NUK For Nature 100% Sustainable Silicone Pacifier if they had known the true facts regarding Defendants' environmental claims.

98. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and the Nationwide Class members is unjust and inequitable, Plaintiffs and the Nationwide Class members seek return of all monies Defendants acquired from its unlawful conduct, including disgorgement of all profits and establishment of a constructive trust.

99. Therefore, Plaintiffs pray for relief as set forth below.

<u>**THIRD CLAIM FOR RELIEF**</u>
**Fraud**
*(On behalf of all Plaintiffs and the Nationwide Class)*

100.     Plaintiffs reassert the allegations set forth above in paragraphs 1 through 78 and incorporate such allegations by reference herein.

101.     Plaintiffs bring this claim individually and on behalf of the Nationwide Class for intentional misrepresentation and fraud under the common law.

102.     Defendants made false and misleading environmental claims with its NUK For Nature 100% Sustainable Silicone Pacifier, including in its marketing and advertising.

103.     The misrepresentations and omissions made by Defendants are material because Plaintiffs and the Class members relied—and continue to rely—on the representations made about the NUK For Nature 100% Sustainable Silicone Pacifier.

104.     The misrepresentations and omissions Defendants made, upon which Plaintiffs and the Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and the Class members to purchase the NUK For Nature 100% Sustainable Silicone Pacifier.

105.     Plaintiffs and the Class members did not and could not have known that Defendants' environmental claims about the NUK For Nature 100% Sustainable Silicone Pacifier were wholly or partially untrue. Plaintiffs and the Class members would not have purchased Defendants' NUK For Nature 100% Sustainable Silicone Pacifier or would have purchased the NUK For Nature 100% Sustainable Silicone Pacifier under different terms, had they known the true facts.

**FOURTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**
*(On behalf of all Plaintiffs and the Nationwide Class)*

106.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 78 above and incorporate such allegations by reference herein.

107.     Defendants represented to Plaintiffs and the Class members that their NUK For Nature 100% Sustainable Silicone Pacifier was environmentally

friendly, including that it is "sustainable," made from "100% sustainable silicone," and that it is "for nature."

108.    At the time Defendants made these representations, they knew or should have known that these representations were false or otherwise made without knowledge of their truth or veracity.

109.    At a minimum, Defendants negligently misrepresented and/or negligently omitted material facts about the NUK For Nature 100% Sustainable Silicone Pacifier.

110.    The negligent misrepresentations and omissions Defendants made, upon which Plaintiffs and the Class members reasonably and justifiably relied, were intended to induce and actually did induce Plaintiffs and the Class members to purchase the NUK For Nature 100% Sustainable Silicone Pacifier.

111.    Plaintiffs and the Class members would not have purchased the NUK For Nature 100% Sustainable Silicone Pacifier or would have purchased the NUK For Nature 100% Sustainable Silicone Pacifier under different terms, if the true facts had been known.

112.    Defendants' negligent actions caused harm to Plaintiffs and the Class members, who are entitled to damages and other legal and equitable relief as a result.

## FIFTH CLAIM FOR RELIEF
### Violation of the Georgia Fair Business Practices Act
### O.C.G.A. §§ 10-1-390, *et seq.*
*(On behalf of all Plaintiffs and the Nationwide Class, or alternatively the Georgia Subclass)*

113.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 78 above and incorporate such allegations by reference herein.

114.     Plaintiffs bring this claim against Defendants on behalf of themselves and the Nationwide Class, or alternatively, on behalf the Georgia Subclass members.

115.     Defendants' deceptive acts and practices, including their omission of material facts, were direct to consumers.

116.     Defendants' deceptive acts and practices, including marketing, labeling, advertising, and selling the Pacifier as "For Nature 100% Sustainable Silicone," when it is in fact a disposable product that is manufactured, used, thrown away in manners that do not support a "100% sustainable" claim. Defendants also omitted the fact that the Pacifier is not *more* sustainable than other silicone pacifiers on the market, or even more sustainable than their own "Classic" pacifiers, which are also made of silicone.

117.     Defendants' unfair and deceptive acts and practices, including their omissions, were and are deceptive acts or practices in violation of the Georgia Fair Business Practices Act, O.C.G.A. §§ 10-1-390, *et seq.*, by:

a. Representing that goods or services have characteristics that they do not have;

b. Representing that goods or services are of a particular standard, quality, or grade if they are of another;

c. Advertising goods or services with intent not to sell them as advertised;

d. Omitting material facts related to the use and disposal of the Pacifier, including that it is a disposable product; and

e. Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

118.    These acts and practices, as described above, have deceived Plaintiffs and the Class members, causing them to lose money by purchasing the Pacifier, or paying more for the Pacifier than they otherwise would.

119.    Plaintiffs and the Class members suffered damages when they purchased the Pacifier.  Defendants' deceptive and unfair practices caused actual damages to Plaintiff and the Class members who were unaware that the Pacifier was not 100% Sustainable and that the Pacifier was a disposable product.

120.    Defendants' deceptive acts and practices, including their omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

121.    Consumers, including Plaintiffs and the Class members would not have purchased the Pacifier, or would have paid less for it, had they known it was not "100% Sustainable."

122.    As a direct and proximate result of Defendants' deceptive acts and practices, including representing the Pacifier as 100% Sustainable when it is not, Plaintiffs and the Class members have been damaged, and are entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

123.    Plaintiffs and the Class members also seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable and reasonable attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**Georgia Uniform Deceptive Trade Practices Act**
**O.C.G.A. §§ 13-1-370,** *et seq.*
*(On behalf of all Plaintiffs and the Nationwide Class, or alternatively the Georgia Subclass)*

124.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 78 above and incorporate such allegations by reference herein.

125.    Plaintiffs bring this claim against Defendants on behalf of themselves and the Nationwide Class, or alternatively, on behalf the Georgia Subclass members.

126.    Defendants, Plaintiffs, and Class members are "persons within

the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

127.     Defendants engaged in deceptive trade practices in the conduct of its business in violation of O.C.G.A. § 10-1-372(a), which states in pertinent part that it is a deceptive trade practice to:

> (a)(5) Represent[] that goods or services have sponsorship, approval, characteristics, . . . uses, [or] benefits . . . that they do not have;

> (a)(7) Represent[] that goods or services are of a particular standard, quality, or grade . . . if they are of another; or

> (a)(12) Engage[] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

128.     Defendants engaged in deceptive trade practices in violation of the Georgia DTPA, Ga. Code Ann. § 10-1-372(a)(5), (7), and (12), by, among other things representing that the Pacifier as "For Nature 100% Sustainable Silicone," when it is in fact a disposable product that is manufactured, used, thrown away in manners that do not support a "100% sustainable" claim. Defendants also omitted the fact that the Pacifier is not *more* sustainable than other silicone pacifiers on the market, or even more sustainable than their own "Classic" pacifiers, which are also made of silicone.

129.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the sustainability of Defendants' Pacifier.

130.     Defendants intended to mislead Plaintiffs and Class members and induce them to rely on their misrepresentations and omissions.

131.     Plaintiffs and Class members relied on Defendants' representations about the sustainability of their Pacifier.

132.     Plaintiffs and the Class members would not have purchased the Pacifier, or would have paid less for it, had they known it was not "100% Sustainable."

133.     As a direct and proximate result of Defendants' deceptive acts and practices, including representing the Pacifier as 100% Sustainable when it is not, Plaintiffs and the Class members have been damaged, and are entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

134.     Defendants continue to market and sell their Pacifier as 100% Sustainable when it is not.  Plaintiffs and the Class are therefore entitled to the injunctive relief sought herein, to prohibit Defendants from marketing and selling their Pacifier as 100% Sustainable.  Absent injunctive relief, Defendants will continue to misrepresent their Pacifier as 100% Sustainable.

135.     The Georgia UDTPA states that the "court, in its discretion, may award attorney's fees to the prevailing party if . . . [t]he party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Ga. Code Ann. § 10-1-373(b)(2).  Defendants willfully engaged in deceptive trade practices knowing them to be deceptive.  Defendants knew or should have known that their representations regarding the Pacifier were false and/or misleading.

136.     The Georgia UDTPA states that "[c]osts shall be allowed to the prevailing party unless the court otherwise directs." Ga. Code Ann. § 10-1-373(b).  Plaintiffs and the Class are entitled to recover their costs of pursuing this litigation.

137.     Plaintiffs and Class members seek all monetary and non-monetary relief allowed by the Georgia UDTPA, including injunctive relief and attorneys' fees.

### SEVENTH CLAIM FOR RELIEF
**Violation of the California Consumer Legal Remedies Act**
**California Civil Code § 1750, *et seq.***
*(On behalf of the California Plaintiff and the California Subclass)*

138.     The California Plaintiff Benitez, identified above, ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

139.     This cause of action is brought pursuant to the California

Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"), by Plaintiff on behalf of the California Subclass members.

140.     Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

141.     Plaintiff and the other members of the California Subclass are "consumers" as that term is defined by the CLRA and Plaintiff purchased the Pacifier described herein for personal use.[45]

142.     The Pacifier that Plaintiff and similarly situated members of the California Subclass purchased from NUK, other a third-party vendor selling the Pacifier, are "goods" within the meaning of the CLRA.[46]

143.     By engaging in the actions, representations, and conduct set forth in this Class Action Complaint, as described above, Defendants have violated, and continues to violate §§ 1770(a)(4), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA.

144.     In violation of California Civil Code § 1770(a)(4), Defendants used deceptive representations in connection with goods.

145.     In violation of California Civil Code § 1770(a)(5), Defendants

---

[45] CAL. CIV. CODE § 1761(d).
[46] *Id.* § 1761(a).

represented that goods have approval, characteristics, uses, benefits, and qualities that they do not have.

146.    In violation of California Civil Code § 1770(a)(7), Defendants' acts and practices constitute improper representations that the goods and/or services it sells are of a particular standard, quality, or grade, when they are of another.

147.    In violation of California Civil Code § 1770(a)(9), Defendants advertised goods with intent not to sell them as advertised.

148.    Specifically, Defendants' acts and practices led consumers to believe that the Pacifier was, variously and without limitation, "For Nature" and "100% Sustainable Silicone," when in fact, the products are not sustainable because they are disposable products, and Defendants recommend consumers replace the Pacifier every 2 months, just like Defendants' other pacifier products. Defendants additionally made false and/or deceptive representations and statements that led reasonable consumers to believe that the products were manufactured in a manner that was "100% Sustainable" and thereby more sustainable than other "silicone" pacifiers on the market. These representations were false.

149.    Further, Defendants omitted material facts that they had a duty to disclose, as alleged above.  Specifically, Defendants failed to disclose that the Pacifier was not 100% Sustainable.

150.    Defendants' concealment of the true characteristics of the

Pacifier was material to Plaintiff and the California Subclass members.  Had they known the truth, Plaintiff and the California Subclass members would not have purchased the products or would have paid significantly less for them.

151.    Defendants, as explained above, had an ongoing duty to Plaintiff and the California Subclass members to refrain from unfair and deceptive practices under the CLRA.   Specifically, Defendants owed Plaintiff and the California Subclass members a duty to disclose material facts concerning the Pacifier because Defendants possessed exclusive knowledge, they intentionally concealed that knowledge from Plaintiff and the California Subclass members, and/or they made partial representations that were misleading since they concealed the aforementioned facts.

152.    Plaintiff and California Subclass members had no reasonable means of learning the facts that Defendants have concealed or failed to disclose because they were unaware of the manufacturing, use, and disposal process of the Pacifier.  Furthermore, Defendants misrepresented, or at least omitted, a key part of that manufacturing process, which was the resource exhaustive use of sand and heating that sand to high temperature to create the silicone used in the Pacifier.  Additionally, labeling the Pacifier 100% Sustainable is misleading when the product is disposable after 2 months and is not biodegradable or recyclable.

153.    Plaintiff and the California Subclass members suffered

ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

154.   Plaintiff requests that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to the CLRA.[47]  If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and other California Subclass members will continue to suffer harm.

155.   On August 22, 2024, Plaintiffs provided Defendants with notice and a demand on behalf of Plaintiff and all others similarly situated that Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  Defendants have not responded at this time, and if they do not respond or fail to correct or rectify the conduct described herein, Plaintiff will seek all available damages pursuant to the CLRA.

**EIGHTH CLAIM FOR RELIEF**
**Violation of the California False Advertising Law**
**California Business and Professions Code § 17500, *et seq*.**
*(On behalf of the California Plaintiff and the California Subclass)*

156.   The California Plaintiff Benitez, identified above, ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass

---

[47] *Id.* § 1780(a)(3).

members, repeats and realleges the allegations contained in paragraphs 1 through 789 as if fully set forth herein.

157.   Beginning at an exact date unknown to Plaintiff, but since at least as early as the time of the first Plaintiff's purchase and continuing until today, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Pacifier, and, in particular, those advertised as, variously and without limitation, "For Nature and 100% Sustainable."

158.   As set forth herein, Defendants have made representations and statements that led reasonable consumers to believe that that the Pacifier was, variously and without limitation, "For Nature and 100% Sustainable," when in fact, the Pacifier is disposable and Defendants recommend consumers replace the product every two months, the same replacement period as Defendants' other pacifier products that do not bear the environmental and sustainability representations.

159.   Plaintiff and those similarly situated relied to their detriment on Defendants' false, misleading, and deceptive advertising and marketing practices. Had Plaintiff and the California Subclass members been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, paying less for the Pacifier.

160.   Defendants' acts and representations were likely to deceive the

general public.

161.    Defendants engaged in these false, misleading, and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendants have engaged in false advertising in violation of the FAL.

162.    The aforementioned practices, which Defendants have used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

163.    Plaintiff seeks, on behalf of herself and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.  Even for those who did not buy the Pacifier directly from Defendants, a certain amount of money flowed from the Plaintiff and the California Subclass members, who purchased the products through retailers, to Defendant.  Plaintiff seeks restitution of all amounts so recoverable.

164.    If Plaintiff's and the California Subclass members' claims at law fail, Plaintiff, those similarly situated, and/or other consumers will have no adequate remedy at law by which they can obtain recovery for the economic harm they have

suffered.  Plaintiff seeks on behalf of themselves and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein.

165.    Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading, and deceptive advertising, and injunctive relief restraining Defendants from engaging in any such advertising and marketing practices in the future.  Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants is not entitled.  Plaintiff, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the FAL alleged to have been violated herein.

166.    As a direct and proximate result of such actions, Plaintiff and the California Subclass members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial.

## NINTH CLAIM FOR RELIEF
### Violation of the California Unfair Competition Law
### California Business and Professions Code § 17200, *et seq.*
*(On behalf of the California Plaintiff and the California Subclass)*

167.     The California Plaintiff Benitez, identified above, ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass members, repeats and realleges the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

168.     This cause of action is brought pursuant to the California Unfair Competition Law, California Civil Code § 17200, *et seq.* ("UCL"), by Plaintiff on behalf of the California Subclass members.

169.     Defendants have engaged in, and continue to engage in, unfair, unlawful, and deceptive trade practices in California by carrying out the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, Defendants have engaged in, and continue to engage in, unfair, unlawful and deceptive trade practices by, without limitation, the following:

a.  engaging in misrepresentation and omissions as described herein;

b.  violating the CLRA as described herein; and

c.  violating the FAL as described herein.

170.     Defendants, in their marketing, advertising, and labeling of the Pacifier made false and misleading statements and omissions regarding the quality and characteristics of the pacifiers at issue, specifically, marketing and labeling the

Pacifier as "For Nature 100% Sustainable Silicone," when in fact the pacifier was manufactured, used, and disposed like any other replaceable pacifier.  Such claims and omissions appear on the label of the Pacifier label, product descriptions on online stores such as Amazon, Target, and Walmart, and other advertisements.

171.    Plaintiff and those similarly situated relied to their detriment on Defendants' unfair, deceptive, and unlawful business practices.  Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by, without limitation, not paying for, or, at a minimum, paying less for the Pacifier.

172.    Defendants' labeling, marketing, and advertising of the Pacifier led to, and continues to lead to, reasonable consumers, including Plaintiff and the California Subclass Members, believing that the Pacifier is "100% Sustainable" and is otherwise unimpactful to the environment, when in reality, it is just as disposable as any other pacifier.

173.    The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."[48]

174.    Defendants do not have any reasonable basis for the claims about the Pacifier made in Defendants' marketing, advertising, and on Defendants'

---

[48] CAL. BUS. & PROF. CODE § 17200.

packaging or labeling because the Pacifier is not "100% Sustainable. Defendants knew or should have known that the Pacifier is not "100% Sustainable," yet Defendants intentionally advertised and marketed the Pacifier to deceive reasonable consumers into believing that the Pacifier conformed to Defendants' environmental and sustainability representations, as described above.

175.    In addition, Defendants' use of various forms of marketing and advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue, or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code §§ 17200 and 17531.

176.    Defendants engaged in these unlawful, deceptive, and unfair practices to increase its profits.  Accordingly, Defendants have engaged in unlawful trade practices prohibited by the UCL.

177.    Defendants failed to avail themselves of reasonably available, lawful alternatives to further its legitimate business interests.

178.    In addition to the unlawful and deceptive acts described above, Defendants engaged in unfair practices by violating the Federal Trade Commission's guides against bait advertising.  16 C.F.R. §§ 238.1–4.  The policy provides that "No statement or illustration should be used in any advertisement which creates a false

impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, the purchaser may be switched from the advertised product to another."[49]  Defendants' aforementioned acts violated this policy, including their representations that the Pacifier is "For Nature 100% Sustainable."

179.    The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

180.    As a direct and proximate result of such actions, Plaintiff and the California Subclass members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial.

181.    The injuries to Plaintiff and the California Subclass members resulting from Defendants' unfair business practices outweigh any benefits. Defendants' actions of marketing, advertising, and labeling the Pacifier as "For Nature 100% Sustainable" does not confer any benefit to consumers when the consumers do not receive products commensurate with the consumers' reasonable

---

[49] 16 C.F.R. § 238.2(a).

expectations engendered by such false, misleading, and deceptive marketing and labeling.  Consumers cannot reasonably avoid the injuries caused by Defendants' deceptive labeling and advertising of the Pacifier.  Accordingly, the injuries caused by Defendants' deceptive labeling, marketing, and advertising outweigh any benefits.

182.    If Plaintiff's and California Subclass members' claims at law fail, Plaintiff, those similarly situated and/or other consumers will have no adequate remedy at law by which they can obtain recovery for the economic harm they have suffered.

183.    Plaintiff seeks on behalf of Plaintiff and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

184.    Plaintiff seeks on behalf of Plaintiff and those similarly situated, an injunction to prohibit Defendants from offering the Pacifier within a reasonable time after entry of judgment. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers, including Plaintiff, to repeatedly and continuously seek legal redress in

order to recover monies paid to Defendants to which it was not entitled. Plaintiff, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## TENTH CLAIM FOR RELIEF
### Violation of New York's General Business Law § 349
*(On behalf of New York Plaintiff and the New York Subclass)*

185.    The New York Plaintiff Kouyate, identified above, ("Plaintiff," for purposes of this Count), individually and on behalf of the New York Subclass, repeats and realleges the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

186.    The New York General Business Law ("GBL") § 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in [New York]."

187.    Plaintiff resides in and is a citizen of New York and he purchased the Pacifier from the Target located in Bronx, New York. Defendants sell the Pacifier in New York and to New York residents as part of their regular course of business. Defendants also advertise, market, and distribute the Pacifier throughout the state of New York and to New York citizens and residents.

188.    As fully alleged above, by advertising, marketing, distributing, and selling to Plaintiff and the New York Subclass members the Pacifier with the

claims that it was "For Nature" and "100% Sustainable Silicone," Defendants engaged in, and continue to engage in, deceptive acts and practices because the Products are not "100% Sustainable."

189.     Defendants have violated, and continue to violate, § 349 of the New York General Business Law and similar statutes, which makes deceptive acts and practices unlawful.

190.     Plaintiff and the New York subclass believed Defendants' representations about the Pacifier and would not have purchased the Pacifier, or would have paid less for it, had they known the Pacifier was not actually "100% Sustainable" and has the same disposability recommendations and requirements as other silicone and plastic pacifiers on the market.

191.     Plaintiff and the New York Subclass were injured in fact as a result of Defendants' conduct and representations of improperly labeling, marketing, and advertising the Pacifier as "For Nature 100% Sustainable Silicone."  Plaintiff and the New York Subclass members paid for a 100% Sustainable Silicone product but did not receive that product.

192.     The products Plaintiff and the New York Subclass members received were worth less than the products for which they paid.

193.     Defendants' conduct, as alleged throughout this Complaint, constitutes deceptive acts and practices in violation of GBL § 349 and Defendants

are liable to Plaintiff and the New York Subclass members for damages they have suffered as a result of Defendants' actions. The amount of such damage is to be determined at trial but will not be less than fifty dollars per violation. N.Y. Gen. Bus. Law § 349(h).

194.    Plaintiff and the New York Subclass members also seek to enjoin Defendants' unlawful and deceptive acts and practices described above. Plaintiff and each of the New York Subclass members will be irreparably harmed unless the Court enjoins Defendants' unlawful and deceptive actions, including that Defendants will continue to falsely and misleadingly advertise the Pacifier as "For Nature 100% Sustainable Silicone."

195.    Plaintiff and the New York Subclass members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief prohibiting Defendants from continuing to disseminate its false and misleading statements, and other relief allowable under GBL § 349.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of New York's General Business Law § 350**
*(On behalf of New York Plaintiff and the New York Subclass)*

196.    The New York Plaintiff Kouyate, identified above, ("Plaintiff," for purposes of this Count), individually and on behalf of the New York Subclass

members, repeats and realleges the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

197.     GBL § 350 prohibits "false advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in [New York]."

198.     Plaintiff resides in and is a citizen of New York and he purchased the Pacifier from the Target located in Bronx, New York. Defendants sell the Pacifier in New York and to New York residents as part of their regular course of business. Defendants also advertise, market, and distribute the Pacifier throughout the state of New York and to New York citizens and residents.

199.     As fully alleged above, by advertising, marketing, distributing, and selling to Plaintiff and the New York Subclass members the Pacifier with the claims that it was "For Nature" and "100% Sustainable Silicone," Defendants engaged in, and continue to engage in, deceptive acts and practices because the Products are not "100% Sustainable."

200.     Defendants have violated, and continues to violate, § 350 of the New York General Business Law and similar statutes, which makes deceptive acts and practices unlawful.

201.     Plaintiff and the New York subclass members believed Defendants' representations about the Pacifier and would not have purchased the Pacifier, or would have paid less for it, had they known the Pacifier was not actually

"100% Sustainable" and has the same disposability recommendations and requirements as other silicone and plastic pacifiers on the market.

202.    Plaintiff and the New York Subclass were injured in fact as a result of Defendants' conduct and representations of improperly labeling, marketing, and advertising the Pacifier as "For Nature 100% Sustainable Silicone."  Plaintiff and the New York Subclass members paid for a 100% Sustainable Silicone product but did not receive that product.

203.    The products Plaintiff and the New York Subclass members received were worth less than the products for which they paid.

204.    Defendants' conduct, as alleged throughout this Complaint, constitutes deceptive acts and practices in violation of GBL § 350 and Defendants are liable to Plaintiff and the New York Subclass members for damages they have suffered as a result of Defendants' actions. The amount of such damage is to be determined at trial but will not be less than five hundred dollars per violation. N.Y. Gen. Bus. Law § 350(e).

205.    Plaintiff and the New York Subclass members also seek to enjoin Defendants' unlawful and deceptive acts and practices described above. Plaintiff and each of the New York Subclass members will be irreparably harmed unless the Court enjoins Defendants' unlawful and deceptive actions, including that Defendants will

continue to falsely and misleadingly advertise the Pacifier as "For Nature 100% Sustainable Silicone."

206.     Plaintiff and the New York Subclass members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief prohibiting Defendants from continuing to disseminate its false and misleading statements, and other relief allowable under GBL § 350.

## TWELFTH CLAIM FOR RELIEF
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act,
### 815 ILCS 505/1, *et seq.*
*(on behalf of Illinois Plaintiff and Illinois Subclass)*

207.     The Illinois Plaintiff Zmrhal, identified above, ("Plaintiff," for purposes of this Count), individually and on behalf of the Illinois Subclass members, repeats and realleges the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

208.     Plaintiff resides in and is a citizen of Illinois and she purchased the Pacifier, on multiple occasions, from the Target or Jewel Osco located in Westmont, IL, and from Amazon. Defendants sell the Pacifier in Illinois and to Illinois residents as part of their regular course of business. Defendants also advertise, market, and distribute the Pacifier throughout the state of Illinois and to Illinois citizens and residents.

209.     Defendants are each a "person" as defined by 815 Ill. Comp. Stat. §§ 505/1(c).

210.     Plaintiff and Illinois Subclass Members are "consumers" as defined by 815 Ill. Comp. Stat. §§ 505/1(e).

211.     Defendants' conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).

212.     Defendants' deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2, included representing that the NUK For Nature 100% Sustainable Silicone Pacifier had the sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities, that the NUK For Nature 100% Sustainable Silicone Pacifier does not have.

213.     Defendants also deceptively labeled the NUK For Nature 100% Sustainable Silicone Pacifier as "sustainable," "100% sustainable silicon," "for nature," and with similar claims identified above to confuse and deceive consumers.

214.     By disseminating materially misleading and deceptive representations and statements throughout Illinois to consumers, including Plaintiffs and members of the Illinois Subclass, Defendants were likely to deceive reasonable consumers in violation of § 505.

215.     Defendants' deceptive practices were specifically designed to induce reasonable consumers like Plaintiffs to purchase the NUK For Nature 100%

Sustainable Silicone Pacifier.  Defendants' uniform, material representations and omissions regarding the NUK For Nature 100% Sustainable Silicone Pacifier were likely to deceive and did deceive consumers.  Defendants knew or should have known that its uniform representations, as alleged herein, were untrue or misleading.

216.    Plaintiff and the Illinois Subclass purchased the NUK For Nature 100% Sustainable Silicone Pacifier in reliance on the representations made by Defendants, as alleged herein.  Defendants intended to mislead Plaintiff and Illinois Subclass Members and to induce them to rely on its misrepresentations and omissions.

217.    Defendants' unfair and deceptive practices and acts were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury that these consumers could not reasonably avoid.  The resulting injury to Plaintiff outweighed any benefits to consumers or to competition.

218.    Defendants acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiff and Illinois Subclass Members' rights.

219.    Defendants continue to engage in the unlawful, unfair, and deceptive practices in violation of § 505.

220.    Plaintiff and members of the Illinois Subclass have been directly and proximately injured by Defendants' conduct in ways including, but not limited

to, the monies paid to Defendants for the NUK For Nature 100% Sustainable Silicone Pacifier that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiffs and Subclass members.

221.     As a direct and proximate result of Defendants' unlawful conduct in violation of § 505, Plaintiff and members of the Illinois Subclass are entitled to an order of this Court enjoining such future wrongful conduct and requiring Defendants to disclose the true nature of their misrepresentations.

222.     Plaintiff and Illinois Subclass Members also seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

<u>**THIRTEENTH CLAIM FOR RELIEF**</u>
**Violation of Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS 510/2, *et seq.***
*(on behalf of Illinois Plaintiff and the Illinois Subclass)*

223.     The Illinois Plaintiff Zmrhal, identified above, ("Plaintiff," for purposes of this Count), individually and on behalf of the Illinois Subclass members, repeats and realleges the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

224.     Defendants are each a "person" as defined by 815 Ill. Comp. Stat. §§ 510/1(5).

225.     Defendants engaged in deceptive trade practices in the conduct of their business, in violation of 815 Ill. Comp. Stat. §§ 510/2(a), including by:

    a.  Representing that goods or services have characteristics that they do not have;

    b.  Representing that goods or services are of a particular standard, quality, or grade if they are of another;

    c.  Advertising goods or services with intent not to sell them as advertised; and

    d.  Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

226.     Defendants' act of labeling the NUK For Nature 100% Sustainable Silicone Pacifier as "sustainable," "100% sustainable," "for nature", and with other similar statement identified herein, when they are actually harmful to the environment, caused injuries to consumers and was unfair and deceptive because consumers did not receive products commensurate with the consumers' reasonable expectations.

227.     Defendants' action of labeling the NUK For Nature 100% Sustainable Silicone Pacifier as sustainable," "100% sustainable," and "for nature" when they are actually harmful to the environment causes injuries to consumers and is unfair and deceptive because consumers end up overpaying for the NUK For

Nature 100% Sustainable Silicone Pacifier and receiving a product of lesser standards than what they reasonably expected and bargained to receive.

228.    Consumer could not avoid any of these injuries caused by Defendants' deceptive labeling and advertising of the NUK For Nature 100% Sustainable Silicone Pacifier.  Accordingly, the injuries Defendants caused outweigh any possible benefit conferred by Defendants' practices in manufacturing, marketing, and selling the NUK For Nature 100% Sustainable Silicone Pacifier.

229.    Defendants' environmental claims were false, misleading, and unreasonable, and constituted unfair and deceptive conduct.  Defendant knew or should have known of its unfair and deceptive conduct.

230.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

231.    The unfair and deceptive practices and acts by Defendants described herein were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to Plaintiffs and Illinois Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

232.    Plaintiffs and the Illinois Subclass suffered injury in fact and lost money as a result of Defendants' unfair conduct.  Plaintiffs and the Class paid an

unwarranted premium for the NUK For Nature 100% Sustainable Silicone Pacifier, or otherwise bargained for a product they did not receive.

233.     Plaintiffs and the Class would not have purchased the NUK For Nature 100% Sustainable Silicone Pacifier, would have paid substantially less for the NUK For Nature 100% Sustainable Silicone Pacifier, or purchased the NUK For Nature 100% Sustainable Silicone Pacifier under different terms, if they had known that the NUK For Nature 100% Sustainable Silicone Pacifier's advertising and labeling were deceptive.

234.     As a direct and proximate result of Defendants' unfair, unlawful, and deceptive trade practices, Plaintiffs and Illinois Subclass Members have suffered and will continue to suffer injury and damages.

235.     Plaintiffs and Illinois Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment in their favor as follows:

a.  Certification the Class and Subclasses pursuant to Rule 23 of the Federal Rules of Civil Procedure and an order that notice be provided to all Class Members;

b.  Designation of Plaintiffs as representatives of the Class and Subclasses and the undersigned counsel, Zimmerman Reed LLP, Jennings, PLLC, and Gibson Consumer Law Group, LLC, as Class Counsel;

c.  An award of damages in an amount to be determined at trial or by this Court;

d.  An order for injunctive relief, enjoining Defendant from engaging in the wrongful and unlawful acts described herein;

e.  An award of statutory interest and penalties;

f.  An award of costs and attorneys' fees pursuant to O.C.G.A. Section 13-6-1 and as otherwise allowed by law; and

g.  Such other relief the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: September 9, 2024

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843
**Gibson Consumer Law Group, LLC**
4279 Roswell Road, Suite 208-108
Atlanta, GA  30342
Telephone: (678) 642-2503
 marybeth@gibsonconsumerlawgroup.com

Brian C. Gudmundson
(*pro hac vice* forthcoming)
Rachel K. Tack
(*pro hac vice* forthcoming)
Benjamin R. Cooper
(*pro hac vice* forthcoming)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 south 8th Street
Minneapolis, MN  55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com
rachel.tack@zimmreed.com
benjamin.cooper@zimmreed.com

Christopher D. Jennings
(*pro hac vice* forthcoming)
Tyler B. Ewigleben
(*pro hac vice* forthcoming)
**JENNINGS PLLC**
P.O. Box 25972
Little Rock, AR  72221
Telephone: (501) 247-6267
chris@jenningspllc.com
tyler@jenningspllc.com

***Attorneys for Plaintiffs***